IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, **Plaintiff**, v. LUIS MATTA-QUIÑONES, **Defendant.** | **Criminal No.** 21-160 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

The United States moves to preclude defendant Luis Matta-Quiñones ("Matta") from introducing exculpatory hearsay statements at trial. (Docket No. 77.) For the reasons set forth below, the motion *in limine* is **GRANTED**.

I.   **Background**[1]

On April 27, 2021, Puerto Rico Police Department ("PRPD") officers approached a "well known drug point" in Loíza, Puerto Rico. (Docket No. 43 at p. 2.) Matta stood adjacent to three individuals. Id. Once the PRPD officers identified themselves, Matta fled the location. Id. PRPD Officer Eduardo Vidal ("Vidal") observed Matta carry a feedbag in his right hand. Id. Matta then ran behind a residence with access to a trail leading to the

---

[1] The factual allegations set forth in this Memorandum and Order derive from the Report and Recommendation issued by Magistrate Judge Marcos E. López on March 15, 2022. See Docket No. 43.

Criminal No. 21-160 (FAB)                                              2

Hacienda Taíno, a horse stable, and Matta's place of employment. Id.  Subsequently, Matta threw the feedbag onto the roof of Hacienda Taíno and continued to run.  Id.  PRPD Officers Daisy Hernández and Ivan Marrero located Matta, however, and arrested him.  Id.  Officer Vidal used a ladder to retrieve the feedbag. Id.  He opened it in Matta's presence, seizing "two Glock pistols, several pistol magazines, an assortment of .40 caliber, 9 mm, and 7.62 mm ammunition, a black coach bag, two iPhones, and $30.50 in cash."  Id. at pp. 2—3.

A grand jury returned a two-count indictment on May 6, 2021, charging Matta with possession of a firearm and ammunition by a prohibited person in violation of 18 U.S.C. § 922(g) (count one), and possession of a machinegun in violation of 18 U.S.C. § 922(o) (count two).  (Docket No. 1.)

The United States moves to preclude Matta from "introducing any evidence, making any statement, or asking any questions that include or could be reasonably expected to elicit the defendant's purportedly exculpatory hearsay."  (Docket No. 77 at p. 1.)  It does not, however, specify which statements are allegedly inadmissible.  Id.  To the extent that the United States requests that the parties comply with the Rules of Evidence, the motion *in limine* is **GRANTED**.

Criminal No. 21-160 (FAB)                                                    3

In his response, Matta presumes that the United States seeks to exclude two post-arrest statements. (Docket No. 97.) First, "upon seeing [the] feedbag," Matta stated to Officer Vidal: "And that? That is not mine" ("*Y eso? No es mío*"). Id. at p. 2. Second, approximately two hours after his arrest, Matta provided the following statement to federal law enforcement agents:

> While I worked at Hacienda Taíno, I observed people and police officers running. I was ordered to the ground and arrested. I have done nothing wrong. I understand the people running were coming from a drug point, and I communicated to the officers that I was on federal supervised release. The officers informed me that I threw something they found and that is why I was arrested.

Id.[2]  Denying ownership of the feedbag and maintaining his innocence undermine the firearm allegations. Accordingly, both statements are self-serving declarations.

## II. Standard

Hearsay is an out-of-court statement offered "in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). This evidence is inadmissible unless a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 802. Matta asserts that these statements are admissible pursuant to the present sense

---

[2] This statement is based on Matta's rendition of the facts. (Docket No. 97 at p. 2.) The Court is not privy to the pertinent Report of Investigation.

Criminal No. 21-160 (FAB) 4

impression and state of mind exceptions in Federal Rules of Evidence 803(1) and 803(3), respectively ("Rule 801(1)" and "Rule 803(3)").  (Docket No. 97.)

### A.   Present Sense Impression

Federal Rule of Evidence 803(1) authorizes the admission of statements "describing or explaining an event or condition, made while or immediately after the declarant perceived it."  Fed. R. Evid. 803(1).  To invoke this hearsay exception, Matta must satisfy three requirements:

> First, the declaration must be limited to describing the event in question.  Second, the statement must be made contemporaneously or immediately after the event described.  Finally, the declarant must have been describing something that she actually perceived herself, though her participation in the event is not required.

United States v. Ferber, 966 F. Supp. 90, 97 (D. Mass 1997) (citations omitted); see 5 Weinstein's Federal Evidence § 803.3 (2021) (listing the three requirements to invoke the Rule 803(1) hearsay exception).  Temporal proximity is a proxy for reliability.  "[The] greater passage of time, the less trustworthy the statement is presumed to be."  United States v. McElroy, 587 F.3d 73, 86 (1st Cir. 2009) ("We admit [a statement pursuant to Rule 803(1)] because the circumstances under which it was given – immediately after an observation – diminish substantially the opportunity for fabrication"); Miller v. Stovall, 742 F.3d 642, 650 (6th Cir. 2014)

Criminal No. 21-160 (FAB)                                           5

(noting that "[c]ontemporaneousness may indicate that statements were truthful only where the speaker would not have had time" to deliberate, particularly because a "criminal could concoct a story in a manner of minutes"); United States v. Woods, 301 F.3d 556, 562 (7th Cir. 2002) ("A declarant who deliberates about what to say or provides statements for a particular reason creates the possibility that the statements are not contemporaneous, and, more likely, are calculated interpretations of events rather than near simultaneous perceptions.").

    **B.  State of Mind**

Federal Rule of Evidence 803(3) sets forth an additional exclusion, removing statements of a "declarant's then-existing state of mind (such as motive, intent, or plan)" from the default hearsay prohibition.  Fed. R. Evid. 803(3); see Horton v. Allen, 370 F.3d 75, 85 (1st Cir. 2004) (noting that Rule 803(3) is premised upon the notion that "such statements are reliable because of their spontaneity and resulting probable sincerity.").  This exclusion does not, however, encompass "statement[s] of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will."  Id.  Only statements concerning a contemporaneous state of mind or future act fall within the ambit of Rule 803(3).  See Mutual Life Ins. Co. v. Hillmon, 146 U.S. 285 (1892) (holding that letters by a

Criminal No. 21-160 (FAB)                                                  6

missing person expressing an intent to visit Crooked Creek were admissible as proof that this person did, indeed, visit the location); United States v. Figueroa, 818 F.2d 1020, 1026-27 (1st Cir. 1987) (holding that a statement regarding the superiority of falsified money demonstrated "the defendant's knowledge of, and sophistication in, the counterfeiting industry," triggering the hearsay exception in Rule 803(3)).  In contrast, declarations pertaining to previous acts are not within the purview of Rule 803(3).  1 Weinstein's Evidence Manual § 16.04 (2022) ("The blanket exclusion of statements of memory or belief is justified on the ground that the dangers of improper perception, faulty memory and deliberate misstatement are far greater when the statement is being used to prove a past fact rather than a future act."); see United States v. Lentz, 282 F. Supp. 2d 399, 413 (E.D. Va. 2002) ("None of the statements are admissible under the state of mind exception to the hearsay rule because these are statements where Ms. Lentz is looking backward to describe factual events that have already occurred.").

     The Rule 803(3) analysis is "fact-sensitive."  United States v. Cianci, 378 F.3d 71, 106 (1st Cir. 2004).  Ultimately, this determination is "committed to the sound discretion of the district court."  United States v. Barone, 114 F.3d 1284, 1301 (1st Cir. 1997) (quoting United States v. Vretta, 790 F.2d 651,

Criminal No. 21-160 (FAB)                                              7

659 (7th Cir. 1986) ("A trial judge has considerable discretion, within the parameters of the rules of evidence, in determining whether the hearsay statements contain the necessary circumstantial guarantees of trustworthiness.")).  As the proponent of hearsay evidence, Matta shoulders the burden of establishing that the post-arrest statements fall within an enumerated exclusion.  See United States v. Bartelho, 129 F.3d 663, 670 (1st Cir. 1997).

**III. The Statement Phrased as a Question**

Matta's first post-arrest statement, "And that?" ("*Y eso*"), is phrased as a question.  Generally, questions are not hearsay. See United States v. Vest, 842 F.2d 1319, 1330 (1st Cir. 1988) ("[What] Waters said in the recorded conversation is not hearsay at all.  As set forth in the margin, his statements were merely questions to Davis, and were not 'offered . . . to prove the truth of the matter asserted.'"); United States v. Rodríguez-López, 565 F.3d 312, 214-15 (6th Cir. 2009) ("A question is typically not hearsay because it does not assert the truth or falsity of a fact.") (quoting United States v. Thomas, 451 F.3d 543, 548 (8th Cir. 2006) ("Questions and commands generally are not intended as assertions, and therefore cannot constitute hearsay.")).

Criminal No. 21-160 (FAB)                                                8

If an out-of-court utterance that is phrased as a question contains an implicit assertion, however, it may constitute hearsay if offered for its truth.  See, e.g., United States v. Dukagjini, 326 F.3d 45, 57 (2d Cir. 2002) (observing that "implied assertions may qualify as hearsay."); 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence, § 8.6, at 57 (4th ed. 2013) ("For purposes of the hearsay doctrine [] the term 'assertion' or 'statement' includes questions and imperatives that express or communicate facts or information about acts, events, or conditions in the world.  Indeed, such formulations of human expression are as much within the hearsay doctrine as simple declarative sentences."); 4 Clifford S. Fishman & Anne T. McKenna, Jones on Evidence, § 24:13, 168 (7th ed. Supp. 2012) ("An utterance that is in the form of a question can in substance contain an assertion of fact.") (quotation marks and citation omitted).  The critical inquiry is not whether the utterance implicitly communicates an assertion, but whether the Matta intended to make one.  See, e.g., United States v. Long, 905 F.2d 1572, 1580 (D.C. Cir. 1990) ("Evidence of unintended implicit assertions is admittedly . . . untested with respect to the perception, memory, and narration (or their equivalents) of the actor, but these dangers are minimal in the absence of an intent to assert and do not justify the loss of

Criminal No. 21-160 (FAB)                                                9

the evidence on hearsay grounds.") (internal quotation marks and citation omitted).

If by uttering "And that?" to Officer Vidal, Matta **intended** to communicate a lack of knowledge about the contents inside the feedbag, then this utterance would constitute inadmissible hearsay. See Rivera-Hernández, 497 F.3d at 82 n.5. The Court cannot determine whether Matta's question to Officer Vidal is admissible in an evidentiary vacuum. Consequently, the admissibility of this statement will be determined in the context of trial.

**IV.  The Hearsay Statements are Inadmissible**

The remaining post-arrest statements constitute inadmissible hearsay. The denial of ownership (*i.e.* "That is not mine") and Matta's declaration that he did "nothing wrong" occurred well after the event described, rendering the present sense impression and state of mind exclusions inapplicable. This time lapse between the pertinent event and Matta's statement to police officers allowed Matta to formulate a favorable response, eroding the reliability of these statements. See Cianci, 378 F.3d at 106 (affirming the exclusion of a statement "[applying] to past acts of the Cicani administration and were to a large extent 'self-serving' attempts to cover tracks already made") (quotation omitted). Indeed, the second post-arrest statement occurred two

Criminal No. 21-160 (FAB)                                               10

hours after the intervention.  See Allscripts Healthcare, LLC v. DR/Decision Resources, LLC, 521 F. Supp. 3d 112, 122 (D. Mass. 2021) ("Although there is no bright-line rule indicating what will constitute contemporaneity, statements made more than 20 minutes after the relevant event almost certainty do not meet that standard."); United States v. Manfre, 368 F.3d 832, 840 (8th Cir. 2004) ("The present-sense-impression exception is rightfully limited to statements made while a declarant perceives an event or immediately thereafter, and we decline to expand it to cover a declarant's relatively recent memories" (*i.e.* affirming the exclusion of a statement made "after an intervening walk")); United States v. Guevara, 277 F.3d 111, 127 (2d Cir. 2001) ("The court's determination that Zamora's statements did not constitute 'present sense impressions' or 'excited utterances' because they were conclusions based upon information she had processed rather than contemporaneous or spontaneous statements that were inherently trustworthy, was neither arbitrary nor irrational.") (citation omitted); United States v. Ramos, Case No. 09-4181, 397 Fed. Appx. 767, 770 (3d Cir. Sept. 24, 2010) (holding that the "district court did not abuse its discretion in ruling that the statement did not satisfy the [contemporaneity] requirement," because "there was a delay of at least twenty minutes" and the declarant was already "detained inside a police car when he made

Criminal No. 21-160 (FAB)                                          11

the statement"); United States v. Green, 556 F.3d 151, 156 (3d Cir. 2009) (affirming the exclusion of a hearsay statement made 50 minutes after the fact and during an interview with federal agents).

Matta cites United States v. Harris, 733 F.2d 994 (2d Cir. 1984), for the proposition that his self-serving post-arrest statements are admissible. This precedent is, however, inapposite. The defendant in Harris informed his probation officer that he "thought the Government and people were after him and trying to set him up." 733 F.2d at 1001. This statement occurred after an informant attempted to purchase heroin from the defendant, but before his arrest. Id. The Second Circuit Court of Appeals held that the defendant's statements were "admissible, not for their truth, but instead as circumstantial evidence of Harris's state of mind – his knowledge of [the informant's] cooperation." Id. at 1004. The statements in Harris occurred during the event described (*i.e.*, the criminal investigation). In contrast, Matta's declarations are post-arrest statements made with the benefit of hindsight.

Because there is no exception for self-serving hearsay, Matta's statements are inadmissible. See United States v. Rivera-Hernández, 497 F.3d 71, 82 n.5 (1st Cir. 2007) (internal citation omitted) ("To be received in evidence an admission . . . must be

Criminal No. 21-160 (FAB)                                                     12

contrary to that party's position at the time of the trial."); United States v. Palow, 777 F.2d 52, 56 (1st Cir. 1985) (holding that Rule 801(d)(2)(A) was "designed to exclude the introduction of self-serving statements by the party making them").

**V. Conclusion**

For the reasons set forth below, the United States' motion *in limine* is **GRANTED**.  (Docket No. 77.)  The Court will determine whether the phrase "And that?" is admissible within the context of trial.  Matta shall seek the Court's permission before eliciting testimony as to the utterance of this phrase.  The remaining post-arrest statements referenced in Matta's response are inadmissible pursuant to Federal Rule of Evidence 802.  This, of course, does not preclude Matta from exercising his constitutional right to testify at trial.  **Trial remains set for September 26, 2022.  The next pretrial conference is August 18, 2022 at 9:00 a.m.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, August 15, 2022.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              SENIOR UNITED STATES DISTRICT JUDGE