IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**　　　　　　　　　　**Criminal No.** 21-160 (FAB)

LUIS MATTA-QUIÑONES,

    **Defendant.**

OPINION AND ORDER

BESOSA, District Judge.

Before the Court is defendant Luis Matta-Quiñones ("Matta")'s motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 ("Rule 29"). (Docket No. 148.) Matta also moves for a new trial pursuant to Federal Rule of Criminal Procedure 33 ("Rule 33"). (Docket No. 159.) For the reasons set forth below, both motions are **DENIED**.

I.  **Background**

On May 6, 2021, a grand jury charged Matta with possession of a firearm and ammunition by a prohibited person in violation of 18 U.S.C. section 922(g) (count one), and possession of a machinegun in violation of 18 U.S.C. section 922(o) (count two). (Docket No. 1.)

Puerto Rico Police Department officers Eduardo Vidal-Santiago ("Vidal"), Ivan Marrero-López ("Marrero"), and Ángel Cruz-Soto

("Cruz") testified at trial.  (Docket Nos. 135 and 136.)  Their
testimony established that on April 27, 2021, Matta possessed two
loaded Glock pistols, several pistol magazines, and an assortment
of .40 caliber, 9 mm, and 7.62 mm ammunition.  (Docket No. 135 at
pp. 32-33.)  After a three-day trial, the jury returned a guilty
verdict as to both counts.  (Docket No. 143.)

## II.  Matta's Motion for a New Trial

Jury deliberations commenced on October 19, 2022.  (Docket
No. 140.)  According to Matta, the Court committed structural
error by permitting "the government's case agent to be present
with the jury while inspecting the evidence."  (Docket No. 159 at
p. 6.)  This Court subsequently received the following note: "May
all the physical evidence be brought to the deliberating room?"
(Docket No. 156 at p. 3.)  The parties and the Court reconvened to
address this request, stating:[1]

> **Court:** My position is that all the physical evidence can
> be brought to the deliberating room except for the
> weapons and the ammunition.  If they want to take a look
> at it, they can come to the courtroom and take a look at
> it in the presence of the agent.
>
> **Defense Counsel Mora:** Your Honor, **our only objection** as
> to your ruling is that if the jury, with your
> authorization, can be able – it was part of our,

---

[1] Defense attorneys, Assistant Federal Public Defenders Edwin Mora-Rolland
("Mora") and Sulay Rios ("Ríos") represented Matta at trial.  (Docket No. 135.)
Assistant United States Attorneys ("AUSA") Joseph Russell and Pedro Casablanca
represented the United States.  Id.  Federal Bureau of Investigation ("FBI")
special agent Alejandro Giovanetti ("Giovanetti") served as the case agent.
Id.

basically, theory of the case and my closing argument, **if the Court can allow them to carry the ammunition in the presence, obviously, of the agent or of the [Court Security Officer, "CSO"].  But that would be our request.** That's essential for the defense.

**Court:** Government? I guess what Mr. Mora wants is that the jury be able to handle the weapons – the ammunition, I guess, in the bag.

**Defense Counsel:** In the bag, Your Honor.  There is no need for them to take it out.

. . .

**AUSA Casablanca:** Your Honor, the position of the Government is, obviously, the jury can take a look at all of the evidence, but again, it's up to them what they want to do with the evidence.

**Court:** No, but if they want to take a – to handle the firearm –

**AUSA Casablanca:** I understand.

**Court:** – and take a look at the firearms – because there's an issue as to whether the firearms – whether the defendant knew that they were machine guns.  So the jury may want to take a look at the firearm to make its own decision as to that.

. . .

**Court:** So let me start writing down.  Okay.  So let me write something out here.  Okay.  As far as that question: "The physical evidence may be brought into the deliberating room except for the firearms and the ammunition.  The jury may view and handle the ammunition in the courtroom with the **case agent present**."  Is that okay?

**Defense Counsel Mora: No, Your Honor.  We object as to that because I do – our request would be for the firearms and ammunition to be brought to the deliberating room.**

**Court:** Denied. No, no.  No way.  No way, because the case agent has to be present when they view and handle the firearms.  The agent cannot say a word.

**Defense Counsel Mora:**  That would be –

**Court: He has to be present.**

**Defense Counsel Mora: Okay.** But –

**Defense Counsel Ríos:** Who else – is it just going to be the CSO and the case agent?

**Court:** The CSO, the Marshal, and the agent.  That's it. Everybody else has to leave the courtroom.

**Defense Counsel Mora: Yes, of course.  Okay.  That was going to be our second request.**

**Court:** Okay.  All right.  That takes care of that.

.  .  .

**Defense Counsel Mora:** Regarding the jury note number one, my question is whether the Court will allow, as it was their request – since they are only allowed to see the ammunition and firearms here in the courtroom in the presence of the case agent, can they also bring, as it –

**Court:**  They can bring what?

**Defense Counsel Mora:**  Can they also bring, if they want to, for example, Exhibit Number 1, which is the feedbag?

**Court:**  Well, the feedbag they are going to have inside.

**Defense Counsel Mora:** Exactly.

**Defense Counsel Ríos:** Yes, Your Honor, but what we are asking the Court is to allow them, if they so wish to, to bring the feedbag into the courtroom, and if they want to do the exercise of putting the firearms –

**Court:** They didn't ask for that.

**Defense Counsel Ríos:** I know, but if –

**Court:** No, they didn't ask.

**Defense Counsel Mora:** They asked to see all the evidence.

**Defense Counsel Ríos:** Our –

**Court:** No.  They said, Can the evidence be brought into the jury room?

**Defense Counsel Mora:** Exactly.

**Court:** I said, Yes, except for the firearm and the ammunition.

**Defense Counsel Mora:** So the evidence will be separated, Your Honor, and that was not their request.  So if they choose to bring the feedbag, because that's – precisely has been our whole issue during trial, they should be allowed to.

**Defense Counsel Ríos:** We are not asking the Court to tell them to do it, but we are asking the Court to allow them, if they so wish to request that, to do it; if they want to bring the feedbag.

**Court:** Government?

**AUSA Casablanca:** If they so wish and they ask specifically for it, we don't have any objection, but it has to come from them.

**Defense Counsel Ríos:** That's all we are asking.

**Court:** But I am not going to say that.  I am just going to say –

**Defense Counsel Mora:** What is written.

**Court:** – what I already said.  If they want to have someone go out to the jury room and bring the feedbag, they can do that.

**Defense Counsel Ríos:** And that's what we are asking.

**Court:** But I am not going to put it in my answer because that's not what the question is.

**Defense Counsel Mora:** Yes, we understand.

**Defense Counsel Ríos:** That's all we are asking the Court, is to – so the CSO and the Marshal are aware that they can do that if that's what they want to do.

**Court: I am going to add, "In the presence of the court security officer, the Deputy United States Marshal, and the case agent."  Is that okay?**

**Defense Counsel Mora: Yes.**

**AUSA Russell:** That's fine, Your Honor.

**Court:** So it starts, "I have discussed your questions with the attorneys, and all agree on the following responses: "The physical evidence may be bought into the jury room except for the firearms and ammunition.  The jury may review and handle the firearms and the ammunition in the courtroom, in the presence of the court security officer, the Deputy United States Marshal, **and the case agent.**" . . . Any problem with that?

**Defense Counsel Mora: No objection.**

**AUSA Russell:** That's fine with the Government, Your Honor.

. . .

**AUSA Casablanca:** Yes.  Since the Court mentioned that the firearms and ammunition, that the jury had to come here for them, and there is going to be the special agent present, is there any specific instruction you may want to give to the special agent?

**Court:** Only to keep his mouth shut.

**Agent Giovanetti:** Yes, Your Honor.

> **Court:** You know, if they jury wants to handle it, it can handle it, but don't explain what the firearm is.  Don't point to any part of the firearm.  Just let the jury – you know, if they want to take a look at it, that's fine.  That's all.
>
> **Defense Counsel Ríos:** Your Honor, may we suggest or ask the Court to give – to make the jury feel more comfortable while doing that, can they just sit in the first bench instead of right in front of where they are going to be working, so they can feel more comfortable handling –
>
> **Court:** Whatever they want to do.
>
> **Defense Counsel Ríos:** I am asking the agent to sit in the first bench instead of at the table right where they are going to handle the evidence.  We don't want the jury to feel uncomfortable.
>
> **Court:** The agent is going to have to give the weapon to –
>
> **Defense Counsel Ríos:** He can place it on the table, Your Honor.
>
> **Court:** Look, don't make a federal case out of it.
>
> **Defense Counsel Ríos:** It actually is, Your Honor.
>
> **Court: The agent is going to have to give the weapon to the jury and will have to stand near the weapon while it's being handled.**
>
> **Defense Counsel Ríos: We understand**, Your Honor; we just –
>
> **Court:** So that's it.

(Docket No. 156 at pp. 3–13) (emphasis added).  The jury then

examined the firearms and ammunition inside the courtroom with

Agent Giovanetti, the CSO and the Marshal.

**A. Rule 33 Legal Standard**

The Court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Rule 33 motions are "sparingly" granted and only when "a miscarriage of justice would otherwise result." Fed. R. Crim. P. 33(b); United States v. Del-Valle, 566 F.3d 31, 38 (1st Cir. 2009) (internal citation and quotation marks omitted). Disposition of Matta's motion for a new trial is "committed to the sound discretion of the district court." United States v. Wright, 937 F.3d 8, 34 n.5 (1st Cir. 2019) (citation omitted). This Court possesses "greater latitude in considering a motion for a new trial than it does in considering a motion for acquittal." United States v. Merlino, 592 F.3d 22, 33 (1st Cir. 2010). For instance, the Court may evaluate "whether its evidentiary rulings at trial were correct." United States v. Dimasi, 810 F. Supp. 2d 347, 362 (D. Mass. 2011) (citing United States v. Wilkerson, 251 F.3d 251, 279 (1st Cir. 2001)).

A Rule 33 motion "grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2). Because Matta maintains that the Court committed structural error, the Rule 33 deadline was November 2, 2022. (Docket Nos. 143 and 159.) Matta filed his Rule 33 on December 9, 2022. (Docket No. 159.) The

United States contends that this request is time barred.  (Docket No. 162.)  Matta moved for an extension of time, however, to obtain the trial transcripts.  (Docket No. 153.)  The Court granted this motion, setting the Rule 33 deadline for December 9, 2022.  (Docket No. 154.)  Because Matta complied with this order, the Rule 33 motion is timely.  (Docket No. 159.)

### B. Matta Waived the Jury Intrusion Argument

An issue is waived "when a party purposefully abandons it, either expressly or by taking a contrary position at trial." United States v. Jinan-Chen, 998 F.3d 1, 6 (1st Cir. 2021) (citation omitted); See United States v. Rodríguez, 311 F.3d 435, 437 (1st Cir. 2022) ("A party waives a right when he intentionally relinquishes or abandons it.") (citation omitted). Waiver is distinct from forfeiture.  The later encompasses the "failure to make [a] timely assertion of a right."  United States v. Brake, 904 F.3d 97, 99 (1st Cir. 2018); United States v. Kilmartin, 944 F.3d 315, 330 (1st Cir. 2019) ("Inasmuch as the defendant did not object to this instruction, his claim of error is forfeited."). This distinction is "critical" because "a waived issue ordinarily cannot be resurrected on appeal, whereas a forfeited issue may be reviewed for plain error."  Rodriguez, 311 F.3d at 437; United States v. Delgado-Sánchez, 849 F.3d 1, 6 (1st Cir. 2017) ("Ordinarily, a party who fails to lodge an objection or raise an

Criminal No. 21-160 (FAB)                                      10

argument below is deemed to have forfeited the argument and faces
plain error review.").

       According to the Rule 33 motion, Matta objected to the case
agent's presence in the courtroom while the jury examined the
firearms and ammunition.  This assertion is false.  Matta provides
an incomplete rendition of the transcript, claiming that the Court:

> modified its ruling confirming that the physical
> evidence may be brought into the deliberating room
> except for the firearms and the ammunition, but the jury
> may view and handle the firearms and the ammunition in
> the courtroom with the case agent present.  This Court
> then asked, "Is that okay?"  Defense counsel objected.
> Specifically, defense counsel stated: "No, Your Honor.
> We object as to that . . . our request would be for the
> firearms and ammunition to be brought to the
> deliberating room.

(Docket No. 159 at p. 5) (emphasis omitted).  Matta's objection
**did not** pertain to the case agent.  Defense counsel Mora stated,
in full, "No, Your Honor, we object as to that because I do – our
request would be for the firearms and ammunition to be brought to
the deliberating room."  (Docket No. 156 at p. 5.)  The objection
referred to the location of the evidence, not of the case agent.

       In fact, Matta repeatedly consented to the case agent's
presence in the courtroom.  After the Court proposed that the jury
"come to the courtroom to take a look at [the firearms and
ammunition] in the presence of the agent," defense counsel Mora
stated "**our only objection** as to your ruling is that if the jury,

with your authorization, can be able – it was part of our, basically, theory of the case and my closing argument, **if the Court can allow them to carry the ammunition in the presence, obviously, of the agent or of the CSO.   But that would be our request.**" (Docket No. 156 at p. 3) (emphasis added).

The Court proposed a written response to the jury, including this sentence: "The jury may view and handle the ammunition in the courtroom with the case agent present," specifically asking the parties if "that is okay?" Id. at pp. 4-5.   Again, defense counsel objected solely as to the location of the evidence, stating "We object as to that because I do – our request would be for the firearms and ammunition to be brought to the deliberating room."   Id. at p. 5.   The Court informed the parties that "[the case agent] has to be present" while the jury examined the firearm and ammunition, clarifying that the "CSO, the Marshal, and the agent [would be in the courtroom].   That's it. Everybody else has to leave the courtroom."   Id.   Defense counsel concurred, stating **"Yes, of course, Okay.**   That was going to be our second request."   Id.   (emphasis added).

The Court afforded Matta additional opportunities to object.   After referring to the case agent in the final jury response, the Court asked the parties: "Any problem with that?" Id. at p. 11.   Defense counsel Mora answered, **"No objection."** Id.

(emphasis added).  The Court reiterated that the case agent "is going to have to give the weapon to the jury and will have to stand near the weapon while it's being handled." Id. at p. 13.  Defense counsel Ríos answered: "**We understand**, Your Honor." Id. (emphasis added).

The record demonstrates that Matta did not merely fail to object; he approved of the agent's presence in the courtroom. Matta "invited" the purported error by consenting to this procedure. United States v. Kakley, 741 F.2d 1, 3 (1st Cir. 1984) ("Whatever error may have occurred was 'invited,' and may not be raised on appeal."); United States v. Serrano-Delgado, 29 F.4th 16, 29 (1st Cir. 2022) ("Absent extreme circumstances not present here, a defendant cannot ask a trial court to follow a certain procedure and then be heard to complain only later on appeal that the trial court did as requested.") (citing United States v. Chen, 998 F.3d 1, 6 (1st Cir. 2021) ("An issue may also be waived if counsel's own conduct invited the trial judge's ruling")); United States v. Lasanta-Sánchez, 681 F. App'x 32, 34-35 (1st Cir. 2017) (holding that "a party cannot concede an issue in the district court and later, on appeal, attempt to repudiate that concession and resurrect the issue") (citing United States v. Ocasio-Cancel, 727 F.3d 85, 90 (1st Cir. 2013) (rejecting the defendant's argument that the district court should have "imposed a concurrent rather

than a consecutive sentence," holding that "[a]ny such argument is waived: in response to the court's statement at the disposition hearing that it did not intend to impose a concurrent sentence, defense counsel repeatedly declared, 'I'm not asking for that.'")).

The First Circuit Court of Appeals decision in <u>United States v. Corbett</u>, 870 F.3d 21 (1st Cir. 2017), is illustrative. During deliberations, the jury submitted a note with a question concerning criminal liability. 870 F.3d at 26. The Court proposed a response, soliciting "the parties' views" on the matter. <u>Id.</u> at 27. Defense counsel stated, "I think it restates the instruction already given, so I have no problem." <u>Id.</u> at 27. The jury subsequently returned a guilty verdict. <u>Id.</u> On appeal, the defendant argued that the instruction contained a misstatement of the law. <u>Id</u>. at 30. The <u>Corbett</u> court "[agreed] with the government that [the defendant] waived any challenge to the district court's response to [the] juror note." <u>Id.</u> "Despite [the] clear invitation from the district court to propose alternative responses, defense counsel, when given the opportunity to voice [the defendant's] position, stated . . . '**I have no problem**.'" <u>Id.</u> (emphasis in original). This acquiescence constituted waiver, foreclosing the issue on appeal. <u>Id.</u> at p. 31.

This Court repeatedly requested input from the parties, providing ample opportunity to object, voice any concern, or propose an alternative response. (Docket No. 156.)  The record is devoid of any indication that Matta objected to the case agent's presence in the courtroom.  Id.  Like the defendant in Corbett, defense counsel had "no objection" to the Court's response.  Id. at p. 11.  Matta's Rule 33 motion cannot rest on a procedure that he endorsed at trial.  Consequently, this motion is **DENIED**.

## C. The Purported Sixth Amendment Violation

The Rule 33 motion is unavailing even if Matta had not waived the jury intrusion issue.  The Sixth Amendment of the United States Constitution guarantees defendants in a criminal trial the right to an "impartial jury."  U.S. Const. amend VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . .").  "An impartial jury is one 'capable and willing to decide the case solely on the evidence before it."  Sampson v. United States, 724 F.3d 150, 163 (1st Cir. 2013) (citation omitted).

Matta contends that the "presence of the case agent presented the jury with a trustworthy" companion, "wholly at odds with the adversary posture in which he should be regarded." (Docket No. 159 at p. 7.)  He cites Turner v. Louisiana for the proposition

that "the evidence developed against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's [constitutional rights]." 379 U.S. 466, 472-73 (1965).   The Turner court reversed the defendant's conviction because impermissible contact between the jury and bailiff contaminated the verdict.   Id.   This precedent is distinguishable.

In Turner, police officers Vincent Rispone ("Rispone") and Hulon Simmons ("Simmons") investigated a murder, arrested the defendant, and obtained a written confession.   Id. at 467.   At trial, Rispone and Simmons supervised the jury, maintaining "close and continual association with the jurors."   Id. at 468.   These officers "drove the jurors to a restaurant for each meal [over the course of three days], and to their lodgings . . . ate with them, conversed with them, and did errands for them."   Id.   Rispone and Simmons also testified at trial, serving as key witnesses for the prosecution.   Id. at 467.   The jury convicted the defendant on all counts.   Id.

The Supreme Court reversed this disposition, holding that the officer's contact with the jury "subverted" the defendant's constitutional right to due process.   Id. at 473.   The extent of the officers' interactions with the jury and participation in the trial constituted significant factors in the Court's analysis.

Rispone and Simmons' testimony was "not confined to some uncontroverted or merely formal aspect of the case for the prosecution." Id. The contested interactions were "continuous and intimate association[s] throughout a three-day trial." Id. This error resulted in "extreme prejudice" despite attestations that the officers did not discuss the case with the jury, rendering the conviction invalid. Id.; see Gonzales v. Beto, 405 U.S. 1052 (1972) ("It is enough to bring the petitioner's case within the four corners of Turner that the key witness for the prosecution also served as the guardian of the jury, associating extensively with the jurors during the trial.") (Stewart, J., concurring).

Turner did not, however, "set down a rigid, *per se* rule automatically requiring the reversal of any conviction whenever any Government witness comes into contact with the jury." Gonzales, 405 U.S. at 1054; see Williams v. Turner, 561 F.3d 740, 745 (7th Cir. 2009) ("The [Turner] Court did not say how many or what types of associations would trigger due-process concerns, but it relied on evidence of extensive interactions among testifying bailiffs and the jurors."); Bowles v. State of Texas, 366 F.2d 734, 738 (5th Cir. 1966) (holding that "the mere existence of contact between sheriff and the jurors resulting from the performance of perfunctory duties required by law and the orderly conduct of court is not sufficient in and of itself to invalidate

the conviction"); Satterwhite v. Collins, Case No. 91-1767, 1993
U.S. App. LEXIS 39656, at *13-14 (4th Cir. July 8, 1993)
("[Bailiff] Perry's dual role as bailiff and reputation witness
does not require reversal of Satterwhite's conviction").  The First
Circuit Court of Appeals has applied a presumption of prejudice
"only where there is an egregious tampering or third party
communication which directly injects itself into the jury
process."  Boylan v. United States, 898 F.2d 230, 261 (1st Cir.
1990); see Johnson v. Wainwright, 778 F.2d 623, 627 (11th Cir.
1985) ("When either the individual's official contact with the
jury or his participation in the prosecution is so minimal in the
jurors' eyes as to have a de minimis impact on the jury's
deliberations for all apparent purposes, some showing of actual
prejudice must be made.").

        Precedent cited by Matta is inapposite.  For instance, the
Ninth Circuit Court of Appeals reversed the defendant's conviction
based on "an adversary's intrusion into the jury room."  United
States v. Pittman, 449 F.2d 1283, 1286 (9th Cir. 1971).  In
Pittman, the district court, "seeking to prevent a loss of
evidence, directed the Government agent who had played the tape
during trial to accompany the court clerk into the jury room to
play the tape for the jury."  Id. at 1285.  This assistance
occurred without knowledge or consent from the parties.  Id.  Also,

the agent previously testified "at length" at trial.  Id.  Lack of consent and the agent's testimony differentiates the facts in Pittman from the circumstances in this case.

Agent Giovanetti's presence in the courtroom was innocuous, a brief and de minimis contact with the jury that does not trigger a presumption of prejudice.  Unlike the officer in Turner, Agent Giovanetti did not testify.  His limited involvement in this proceeding included sitting at the prosecution table and holding a firearm on the first day of trial.  (Docket No. 135 at p. 71.)  The Court instructed agent Giovanetti to remain silent during the firearm inspection.  (Docket No. 156 at p. 12.) Nothing in the record suggests that Agent Giovanetti violated this order.  Furthermore, the presence of the CSO and the Marshal mitigated the risk of any unauthorized communication.[2]  Defense counsel consented to this procedure, a transparent accommodation to ensure jury safety.  Because Agent Giovanetti performed only a ministerial role during trial and jury deliberation, Matta's Rule 33 motion is meritless.  See Lee v. Marshall, 42 F.3d 1296 (9th Cir. 1994) (rejecting the defendant's Turner argument where two

---

[2] The courtroom deputy clerk administered the CSO oath after closing arguments. (Docket No. 155 at p. 58.)  This oath is set forth below:

> You do solemnly swear that you will keep this jury together, **and not permit any person to speak to or communicate with them**, nor to do so yourself, unless by Order of the Court, or to ask whether they have agreed on a verdict, and to return them into court when they have so agreed, or when ordered by the Court.  So Help You God.

(emphasis added).

officers in plain clothes entered the deliberation room without the court's authorization to deliver a video machine); United States v. Pratt, 351 F.3d 131, 138 (4th Cir. 2003) (rejecting the defendant's Turner argument where "the district court permitted a government agent to enter the jury room to 'cue up' an audiotape," and "the court assured compliance through the presence of [a CSO]"); United States v. Culliver, 342 Fed. Appx. 525, 530 (11th Cir. 2009) (rejecting the defendant's Turner argument where the bailiff testified at trial and "escorted a few jurors to a cigarette break and was not with the jurors for more than five minutes"); Minor v. United States, Case No. 93-5879, 1995 U.S. App. LEXIS 9083, at *3-8 (4th Cir. 1995) (rejecting the defendant's Turner argument where the "judge directed the prosecutor to play [a] tape for the jury" without the courtroom reporter or defendant present, and "the prosecutor did not speak but simply operated the tape machine"); Minor v. United States, Case No. 08-1012, 2011 U.S. Dist. LEXIS 31735, at *11 (M.D. Ala. Jan. 6, 2011) (rejecting the defendant's Turner argument where a case agent "assisted in moving [firearms] into the deliberation room," the case agent's "contact was brief," the "contact with the jury was limited to his performance of a ministerial task, and there is no evidence whatsoever of communication of any nature between [the case agent] and the jurors"); United States v. Harrell, 788 F.2d 1524, 1528 (11th

Cir. 1986) (rejecting the defendant's <u>Turner</u> argument where an expert witness entered the deliberation room to explain "the use of a mini cassette").

### III. Matta's Motion for a Judgment of Acquittal

Matta moves for a judgment of acquittal because the United States purportedly "failed to carry its burden [of proof beyond a reasonable doubt]." (Docket No. 148 at p. 2.)

#### A. Rule 29 Legal Standard

A court may set aside a jury's guilty verdict and enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. <u>See</u> Fed. R. Crim. P. 29. In reviewing a motion for judgment of acquittal, a court must consider the evidence "in the light most favorable to the prosecution" and determine whether the "body of proof, as a whole, has sufficient bite to ground a reasoned conclusion that the government proved each of the elements of the charged crime beyond a reasonable doubt." <u>United States v. Lara</u>, 181 F.3d 183, 200 (1st Cir. 1999) (citations omitted).

Rule 29 motions require a court to "take into account all evidence, both direct and circumstantial, and [to] resolve evidentiary conflicts and credibility disputes in favor of the jury's verdict." <u>United States v. Valerio</u>, 676 F.3d 237, 244 (1st Cir. 2012). The First Circuit Court of Appeals has called this

sufficiency of evidence challenge "a tough sell," <u>United States v.</u>
<u>Polanco</u>, 634 F.3d 39, 45 (1st Cir. 2011), observing that defendants
seeking acquittal on this basis "face an uphill battle." <u>United</u>
<u>States v. Pérez-Meléndez</u>, 599 F.3d 31, 40 (1st Cir. 2010); <u>accord</u>
<u>United States v. Hatch</u>, 434 F.3d 1, 4 (1st Cir. 2006) (referring
to the sufficiency of evidence burden as a "daunting hurdle[]")
(internal quotation marks omitted).

       While the sufficiency of the evidence is at the heart of the
Rule 29 inquiry, deference to the jury's verdict controls the
Court's analysis.  To uphold the jury's guilty verdict, the Court
need only determine that the conviction "finds support in a
plausible rendition of the record." <u>See, e.g.</u>, <u>United States v.</u>
<u>Shaw</u>, 670 F.3d 360, 362 (1st Cir. 2012).  Ultimately, Matta must
establish that "the evidence is so scant that a rational factfinder
could not conclude that the government proved **all** the essential
elements of the charged crime beyond a reasonable doubt." <u>United</u>
<u>States v. Vázquez-Soto</u>, 939 F.3d 365, 371 (1st Cir. 2019) (emphasis
in original).

    **1. Count One: Possession of a Firearm and Ammunition by a
       Prohibited Person**

       The grand jury charged Matta with violating 18 U.S.C.
section 922(g)(1) ("section 922(g)(1)").  (Docket No. 1.)  To
obtain a conviction, the United States had to prove three elements

beyond a reasonable doubt: (1) that at the time Matta possessed the charged firearm, he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year; (2) that Matta knowingly possessed the charged firearm; and (3) that Matta's possession of the firearm was in or affecting commerce.  See 18 U.S.C. § 922(g)(1); United States v. Farmer, 988 F.3d 55, 59 (1st Cir. 2021) (setting forth the three elements of section 922(g)(1)).

The United States and Matta stipulated that he is a prohibited person pursuant to the statute, and that the firearms satisfied the interstate commerce requirement.  (Docket No. 130 at p. 2; Docket No. 134 at p. 2.)  Matta argues, however, that the United States failed to prove beyond a reasonable doubt that he possessed a firearm.  (Docket No. 148 at p. 4.)  The Court disagrees.

To satisfy the "knowing possession" element of 18 U.S.C. section 922(g)(1), the United States may prove either actual or constructive possession of the charged firearm.  United States v. Guzmán-Montañez, 756 F.3d 1, 8 (1st Cir. 2014).  "Actual possession" is "immediate, hands-on physical possession."  Id. "Constructive possession" exists when the defendant knowingly has the power and intention at a given time to exercise dominion and control over the firearm, either directly or through others.  See United States v. McLean, 409 F.3d 492, 501 (1st Cir. 2005).  Direct

or circumstantial evidence is admissible.  Guzmán-Montañez, 756 F.3d at 8.

The trial evidence established that Matta possessed two Glock firearms.  Officer Vidal observed that Matta "held in his right hand, like, a plastic bag, a sack like the kind you use for animal feed."  (Docket No. 135 at p. 5.)  This bag contained "ammunition."  Id.  As Matta approached a wooden structure, he "threw what he was holding in his right hand on top of [a] zinc roof."  Id. at pp. 5-6.  Officer Vidal subsequently recovered Matta's bag.  Id.  This bag contained, *inter alia*, "7.62 caliber ammunition, bullets, a small black bag with two pistols in it, and pistol magazines."  Id. at p. 9.  Officer Marrero corroborated this testimony, stating that he observed Matta "wearing black clothes and with a black purse."  Id. at p. 43.  Officer Cruz testified that he "saw [Matta] throw to the right, where this zinc structure was, he threw a plastic bag."  (Docket No. 136 at p. 43.)  Accordingly, ample evidence demonstrates that Matta possessed two firearms on the date of his arrest.

Matta contends that the officers' "testimonies were insufficient, inconsistent, contradictory, and lacking corroborative evidence."  (Docket No. 148 at p. 4.)  For example, Matta emphasizes that officer Marrero "did not see [him] . . . carrying a black handbag or feedbag."  Id. at p. 4 (emphasis

omitted).  He cannot, however, prevail by interpreting isolated facts in a manner that undermines both the verdict and the United States' theory of the case.  On a Rule 29 motion, the Court examines whether "the evidence is insufficient to sustain a conviction," not whether any one particular fact, standing alone, is sufficient to prove a defendant's guilt beyond a reasonable doubt.  Fed. R. Crim. P. 29(a).  The United States need not "[e]liminate every possible theory consistent with the defendant's innocence." Pérez-Meléndez, 599 F.3d at 40 (citation omitted); see also United States v. Abreu, 952 F.2d 1458, 1468 (1st Cir. 1992) ("It is the province of the jury to decide to appropriate weight to give specific evidence.").  That some evidence presented at trial may be subject to an interpretation inconsistent with a finding of guilt is no reason for the Court to disturb the jury's verdict. See United States v. Bravo-Fernández, 264 F. Supp. 3d 366, 372 (D.P.R. 2017 (Besosa, J.).

 2. **Count Two: Possession of Machinegun**

To sustain a violation of 18 U.S.C. section 922(o), the United States had to prove beyond a reasonable doubt that Matta (1) "possessed or transferred a machinegun," with (2) "knowledge that the weapon had the characteristic to bring it within the statutory definition of a machinegun." United States v. Torres-Pérez, 22 F.4th 28, 32 (1st Cir. 2021) (citation omitted).  A

machinegun is "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." United States v. Nieves-Castano, 480 F.3d 597, 599 (1st Cir. 2007) (quoting 26 U.S.C. § 5845(b)).  To satisfy the knowledge prong, the United States must demonstrate that Matta "had knowledge of the characteristics that brought the gun within the statutory definition, and not that . . . he had knowledge that the gun was in fact considered a machine gun under federal law."  Id. Circumstantial evidence, such as "external indicators signaling the nature of the weapon," may establish the defendant possessed the requisite *mens rea*.  Id. (quoting Staples v. United States, 511 U.S. 300, 615 n. 11 (1994)); see, e.g., United States v. Tanco-Báez, 942 F.3d 7, 27 (1st Cir. 2019) ("Taking evidence of the rapid firing of a machinegun in the light most favorable to the verdict, a jury could reasonably find beyond a reasonable doubt that [the defendants] knew that the pistol that was being fired was a machinegun.").

A firearms examiner from the Puerto Rico Institute of Forensic Sciences examined the firearm recovered from Matta's feedbag.  (Docket No. 136 at pp. 79-80.)  This expert testified that the firearm "has a part . . . that does not pertain to this firearm, and that is a metal plate which is inserted in the slide

cover plate, and this is a device that makes this firearm fire automatically." Id. at p. 80.  The metal plate is visible to "the naked eye" and "sticks out" of the firearm.  Id. at p. 82. This plate allowed the firearm to shoot "bursts of bullets, which, by one press of the trigger, it will fire more than one bullet consecutively." Id.  This testimony provided sufficient evidence for a reasonable jury to conclude that Matta knowingly possessed a machinegun.  See Torres-Pérez, 22 F.4th at 33 (affirming a conviction for violating section 922(o) because the "government presented evidence that the alterations to the Glock were obvious and visible").  Accordingly, Matta's motion for judgment of acquittal is **DENIED**.

## IV.  Conclusion

For the reasons set forth above, Matta's motion for a judgment of acquittal and motion for a new trial are **DENIED**. (Docket Nos. 148 and 159.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, January 19, 2023.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE